[No. 12166. Department One. December 16, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
RHOLEDER, *Appellant*.[1]

JURY—CHALLENGE TO PANEL—METHOD OF SELECTION—STATUTES—
CONSTRUCTION. 3 Rem. & Bal. Code, § 94-3, requiring the clerk to
make up the jury list from the latest tax-rolls and poll-books of the
county or from any other official sources of information, and pre-
scribing qualifications for jurors that cannot be ascertained alone
from the tax-rolls or poll-books, is directory merely; and a list
made up from additional sources of information, such as memoranda
by deputy assessors and the personal knowledge of the clerk, does
not render the panel subject to challenge, where there was no attempt
to show any prejudice or consequent injury.

TRIAL—MISCONDUCT OF COUNSEL. Counsel in addressing the jury
have no right to read from law reports or authorities, in view of
Rem. & Bal. Code, §§ 342 and 343, vesting the decision of questions
of law in the court, and questions of fact in the jury, and the amend-
ment of 1909, Id., § 339, requiring written instructions on the law
to be taken into the jury room.

Appeal from a judgment of the superior court for Adams
county, Holcomb, J., entered February 2, 1914, upon a trial
and conviction of rape. Affirmed.

*Adams & Naef*, for appellant.
*W. O. Miller*, for respondent.

MORRIS, J.—The appellant seeks a reversal of the judg-
ment against him upon two grounds, (1) that the lower
court erred in denying his challenge to the jury panel and
motion to quash, and (2) that it was error for the lower
court to refuse his counsel permission to read law to the
jury in addressing it in his behalf.

The pertinent statutes are 3 Rem. & Bal. Code, § 94-3:

"During the month of July of each year the county clerk
of each county in the state shall make up a jury list contain-
ing the names of all the qualified jurors in the county so far as

[1]Reported in 144 Pac. 914.

he may be able to ascertain the same from the latest tax-rolls and poll-books of the county or from any other official sources of information and shall ascertain so far as possible the voting precinct and place of residence of each juror and if these cannot be ascertained, the school district in which he lives. . . . The jury list shall be revised from year to year, new lists being made up each year, adding thereto the names of new residents, and omitting therefrom the names of persons who may have removed from the county, or who may have served as jurors within five years theretofore (unless they be necessary to make up a sufficient list) . . .;"

and Id., § 94-1:

"No person shall be competent to serve as a juror in the superior courts of the state of Washington unless he be (1) An elector and taxpayer of the state, (2) A resident of the county in which he is called for service for more than one year preceding such time, (3) Over twenty-one years of age, (4) In full possession of his faculties and of sound mind, (5) Able to read and write the English language."

It is apparent that an inspection of the tax rolls and poll books would not determine the whole number of qualified jurors resident in any county. Community property is assessed in the name of the husband. The wife might not care to exercise her right of suffrage, so that her name would appear neither on the tax rolls nor poll books. Such absence would not of itself determine her qualifications as a juror; many taxpayers and electors, such as attorneys, school teachers, licensed embalmers, policemen, firemen, women, and persons over sixty years of age are by statute exempt from jury service, yet their names might appear on the tax rolls and poll books, this last statute being of course one of exemption and not of qualification. Other reasons will suggest themselves why the list of qualified jurors could not be wholly determined from these sources; and in recognition of this fact the statute vests in the court certain discretionary powers in determining the question of qualification. To aid him in making up his list, the clerk of Adams county gave to the assessor certain blank slips, to be filled out by the deputy

assessors in going about the county for the purpose of list-
ing the persons and property subject to taxation. These
blank slips were as follows:

"Name............................... Age........
Sex ...............................................
Occupation .........................................
Postoffice, School Dist. No.............................
Jury District, No...................................
Taxpayer above exemptions .........................
Qualified Voter ....................................
Read and write English...............................
Speak English, Good.........Fair........Poor........
Hearing, Good ..............Fair........Poor......."

The clerk, upon receiving these slips from the assessor,
would make use of the information contained in them in mak-
ing up his jury lists. In other cases, the clerk would use his
personal knowledge as to the qualifications of those whose
names appeared on the tax rolls and poll books as to their
qualifications as jurors. The panel from which the jury to
try appellant was about to be selected was drawn from jury
lists made up in this manner. The act of the clerk in so mak-
ing up his jury lists furnishes the basis for appellant's chal-
lenge to the array.

The manner of making up the jury lists indicated by the
statute is merely directory, and need be only substantially
complied with, to the end that a fair and impartial trial may
be had. There are decisions to the effect that statutes de-
scribing the powers and duties of the jury commissioners and
corresponding officers to whom is entrusted the duty of mak-
ing up the jury lists, and prescribing the time and manner of
exercising such duties, are mandatory. But in this state
we have followed the great weight of authority, to the effect
that such statutes are directory and that the fact that
the officer, in the performance of his duty, failed to conform
precisely to the statutory requirements, did not invalidate
his act unless it appears that there is reasonable apprehension
that the complaining party has been prejudiced. The purpose

of all these statutes is to provide a fair and impartial jury, and if that end has been attained and the litigant has had the benefit of such a jury, it ought not to be held that the whole proceeding must be annulled because of some slight irregularity that has had no effect upon the purpose to be effected. There is no attempt to show any prejudice here, but the whole attack is based upon the act of the clerk in making use of the information obtained from sources other than the tax rolls and poll books, it being said that such information is not from "official sources" as demanded by the statute. All we care to say, and all that need be said, is that the clerk has substantially complied with the duty imposed upon him by the statute, and such compliance is sufficient in the absence of any showing of consequent injury. *State v. Krug*, 12 Wash. 288, 41 Pac. 126; *State v. Bokien*, 14 Wash. 403, 44 Pac. 889; *State v. Straub*, 16 Wash. 111, 47 Pac. 227; *State v. Barnes*, 54 Wash. 493, 103 Pac. 792, 23 L. R. A. (N. S.) 932; *State v. Leroy*, 61 Wash. 405, 112 Pac. 635.

While addressing the jury, counsel for appellant attempted to read to the jury from a California case, when, upon objection by the state, he was denied such right. Subsequently a second attempt was made to read certain sections of the code relating to the crime with which appellant was charged, and from Cyc. as to the character of proof in such cases, and the same objection and ruling followed. This is the second error complained of. There is no warrant in our law for the practice sought to be followed. With us, the court, and not the jury, has to determine the law; and in order that counsel may have the benefit of the court's view of the law, it is provided that the charge to the jury shall precede the argument of counsel. If the court has improperly instructed the jury, the remedy is by exception. If all the law applicable to the facts has not been given, the remedy is to request additional instructions. The course sought to be pursued by counsel for appellant would permit each counsel who addressed the jury to usurp the province of the court in determining the

law, and then permit the jury to determine as between conflicting statements which was the proper rule of law to be followed. No such practice can obtain in this state under our present procedure. Appellant's argument is based upon that provision of subd. 4 of Rem. & Bal. Code, § 339 (P. C. 81 § 587), which provides that counsel for the respective parties may "address the court and jury upon the law and facts in the case." This provision is to be read in connection with Rem. & Bal. Code, §§ 342 and 343 (P. C. 81 §§ 593, 595), vesting the decision of questions of law in the court and that of questions of fact in the jury. So that, if the argument is to be had upon the law, it shall be addressed to the court; if upon the facts, to the jury. The amendment of 1909 (Laws 1909, p. 184; Rem. & Bal. Code, § 339), changed the rule theretofore obtaining, so that the charge to the jury should be reduced to writing and read prior to the summing up of counsel, and permitting the jury to take with them for their guidance the written charge as given by the court. It is clear from a reading of all these sections, that the court, and not counsel or the jury, is to determine the law of the case.

No error is found, and the judgment is affirmed.

CROW, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.