196 P.3d 681 (2008)
CITY OF TUKWILA, Petitioner,
v.
Kellas William GARRETT, Respondent.
No. 81067-2.
Supreme Court of Washington, En Banc.
Argued May 6, 2008.
Decided November 26, 2008.
*682 Michael R. Kenyon, Kenyon Disend PLLC, Issaquah, WA, for Petitioner.
*683 Robert Charles Boruchowitz, Ronald A. Peterson Law Clinic, Seattle, WA, for Respondent.
MADSEN, J.
¶ 1 The defendant maintains that pursuant to RCW 2.36.050 jury pools for trials in Tukwila Municipal Court must be composed of persons residing within the city limits of Tukwila. Because the jury pool from which his jury was drawn was not, he contends that the jury pool was selected in violation of the statute. The trial court rejected the defendant's argument, but the superior court agreed and reversed his conviction.
¶ 2 The purpose of article I, section 22 of the Washington State Constitution is to guarantee a fair and random selection of jurors from the county in which a crime is alleged to have been committed. RCW 2.36.050 authorizes a court of limited jurisdiction to select jurors from a more limited pool, "the population of the area served by the court," so long as the jurors are randomly selected. Mr. Garrett advocates for a smaller pool of jurors than the City of Tukwila provides, thus decreasing the opportunity for a diverse and random jury. We reject Mr. Garrett's invitation to shrink the jury pool further than RCW 2.36.050 and our cases require. We reverse the superior court.

FACTS
¶ 3 Mr. Kellas Garrett was charged with violation of a temporary protection order-domestic violence and tried in Tukwila Municipal Court. After the jury returned a guilty verdict, he moved for reversal of his conviction and dismissal of the case on the ground that the jury pool from which his jury was drawn had been improperly selected. King County Superior Court selected the jury pool from areas having zip codes 98168, 98178, and 98188. According to the United States Postal Service website, these three zip codes apply to Tukwila[1] and in fact, Tukwila Municipal Court had selected its jury pools from these three zip codes since 1997. The zip codes only roughly conform to Tukwila's boundaries; however, they also apply to property outside the city. According to Mr. Garrett, none of the jurors on his jury lived in Tukwila.
¶ 4 As mentioned, King County Superior Court selected the jury pool. Prior to Garrett's trial, the Tukwila Municipal Court and the superior court had entered into a memorandum of understanding for a pilot project for trial court coordination of jury services, as permitted by RCW 2.36.052.[2] Pursuant to this agreement, King County Superior Court was responsible for processing jury summonses, maintaining juror information, and processing the responses (or lack thereof) from jurors. The agreement covered an 18-month period, from October 1, 2003 through April 30, 2005, when the written agreement expired by its express terms. Mr. Garrett's trial occurred in September 2005.
¶ 5 When the propriety of the jury pool became an issue, Garrett's attorney inquired about the agreement and process for selecting the jury pool, and initially received an e-mail from the manager of jury services for King County Superior Court who told counsel that the written agreement expired April 30, 2005, and had not yet been renewed because attempts were underway to make greater use of the Internet and make the process easier, with potential costs savings to the municipal court. Later, a declaration prepared by the lead clerk for the Tukwila Municipal Court explained that on expiration of the written agreement, Judge Kimberly Walden of that court had entered an oral agreement with King County Superior Court for provision of continued services. On October 13, 2005, King County Superior Court *684 sent an invoice to the municipal court for jury summons processing from May 2005 through September 2005; the invoice included the period of time in which the jury pool was summoned from which Garrett's jury was selected.
¶ 6 Mr. Garrett argued, however, that Tukwila Municipal Court had no authority to select jurors outside the city limits and that there was no valid agreement in place at the time his jury was selected that allowed King County Superior Court to select the jury pool. The trial court disagreed on both counts and denied his motion for dismissal. The court found[3] that by selecting King County jurors with zip codes provided for the City of Tukwila as well as surrounding areas, the municipal court complied with Washington law for selecting jurors. The court also found that there was a valid agreement with King County Superior Court. The court found that although the written agreement expired April 30, 2005, the superior court continued to provide services under the same terms pursuant to an oral agreement the courts entered into after the written agreement expired. The court concluded that the superior court's selection of the jury pool from the three zip codes designated for Tukwila conformed to statutory requirements.
¶ 7 Mr. Garrett appealed. King County Superior Court reversed his conviction, reasoning that there was no agreement in effect between the two courts and there was a material departure from the legal requirements for jury selection procedure required by law because the Tukwila Municipal Court had no authority to summons jurors from outside of the City of Tukwila and its electoral district. The City sought discretionary review, which the Court of Appeals granted, and the matter was transferred to this court.

ANALYSIS
¶ 8 The superior court held that under RCW 2.36.050 jury panels for trials in Tukwila Municipal Court must be selected from persons residing within the City of Tukwila. RCW 2.36.050 provides that
[i]n courts of limited jurisdiction, juries shall be selected and impaneled in the same manner as in the superior courts, except that a court of limited jurisdiction shall use the master jury list developed by the superior court to select a jury panel. Jurors for the jury panel may be selected at random from the population of the area served by the court.
The City contends that the jury selection process was proper under State v. Twyman, 143 Wash.2d 115, 17 P.3d 1184 (2001). Because interpretation of statutes is at issue, review is de novo. See State v. Nemitz, 105 Wash.App. 205, 210, 19 P.3d 480 (2001).
¶ 9 In Twyman, the defendants were convicted of crimes in the Shoreline Division of King County District Court by juries drawn from a pool selected from an area covered by three King County zip codes that was generally coextensive with the Shoreline Division's electoral district. The defendants argued that this procedure violated RCW 2.36.050 and the state constitution, which requires that "[i]n criminal prosecutions the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." Const. art. I, § 22. The defendants argued that under RCW 2.36.050 the area served by the court was the entire county and that the constitution requires that the jury panel has to originate from the entire county. Alternatively, one defendant argued, as Garrett does in the present case, that the jurors should have been selected only from individuals residing within the exact electoral district of the Shoreline Division. Twyman, 143 Wash.2d at 118, 17 P.3d 1184.
¶ 10 We held that while the King County District Court is technically one court within the county, "its separate divisions make it clear that in any one case the `population of the area served by the court' is that of the division in question." Id. at 121, 17 P.3d 1184 (footnote omitted) (quoting RCW 2.36.050). "[A] district court's electoral *685 district serves as the population area from which its juries should be drawn." Twyman, 143 Wash.2d at 124-25, 17 P.3d 1184. However, both statutes and case law establish that the statutory requirements for making up the jury lists are merely directory and need be only substantially complied with. Id. at 121-22, 17 P.3d 1184; see State v. Tingdale, 117 Wash.2d 595, 600, 817 P.2d 850 (1991); State v. Finlayson, 69 Wash.2d 155, 157, 417 P.2d 624 (1966); W.E. Roche Fruit Co. v. N. Pac. Ry., 18 Wash.2d 484, 488, 139 P.2d 714 (1943); State v. Rholeder, 82 Wash. 618, 620, 144 P. 914 (1914); RCW 2.36.065 (providing that "[n]othing in this chapter shall be construed as requiring uniform . . . method throughout the state, so long as fair and random selection of the master jury list and jury panels is achieved").
¶ 11 The purpose of statutory procedures for making up the jury lists is to provide a fair and impartial jury. Twyman, 143 Wash.2d at 122, 17 P.3d 1184; Finlayson, 69 Wash.2d at 157, 417 P.2d 624. As the court said in Rholeder, 82 Wash. at 620-21, 144 P. 914:
The purpose of all [the statutes prescribing the manner of making up the jury lists] is to provide a fair and impartial jury, and if that end has been attained and the litigant has had the benefit of such a jury, it ought not to be held that the whole proceeding must be annulled because of some slight irregularity that has had no effect upon the purpose to be effected.
In Finlayson, the statute then in effect required that precincts from which jurors were to be selected for the jury list would be selected by lot, the number of jurors from each precinct selected would be as far as practicable equal, and prospective jurors within a given precinct were to be selected by a given and identical numbered sequence based on the number of jurors to be selected from the precinct. Finlayson, 69 Wash.2d at 156, 417 P.2d 624 (quoting former RCW 2.36.060 (1961)). The defendant complained that the precincts were not drawn by lot but instead all precincts were used, selection of jurors was not by a given and identical numbered sequence, the proportionate list of registered voters was taken from registration books by city clerks in some Chelan County cities but by the jury commissioner appointed by the court in Wenatchee and rural precincts, and nothing showed that the number of jurors taken from each precinct was equal. Id.
¶ 12 The court rejected the challenge. The court emphasized that there was no suggestion that any exclusion of any class of citizen from the jury list or any weighting, or any claim that the jury list was not a representative cross section of the community. Id. There was no showing or even argument that there was any inherent bias or prejudice against the defendant from the jury list, the venire, or the jury itself. Id. There was also no claim that the defendant was denied any right to object to the jury or challenge individual jurors. Id. Also, the defendant did not make any complaint about the jury until after the jury verdict. Id. Relying on the analysis in Rholeder, the court again emphasized the paramount purpose of the jury selection statutes to provide a fair and impartial jury. Finlayson, 69 Wash.2d at 157, 417 P.2d 624 (quoting Rholeder, 82 Wash. at 620, 144 P. 914).
¶ 13 An individual does not have the right to a particular juror or jury. State v. Gentry, 125 Wash.2d 570, 615, 888 P.2d 1105 (1995). Prejudice will be presumed only if there is a material departure from the statutory requirements. Twyman, 143 Wash.2d at 122, 17 P.3d 1184; Tingdale, 117 Wash.2d at 602, 817 P.2d 850; W.E. Roche Fruit Co., 18 Wash.2d at 487, 139 P.3d 714. If there is substantial compliance with the statute, then a challenger may claim error only if he or she establishes actual prejudice. Twyman, 143 Wash.2d at 122, 17 P.3d 1184 (unless there is a "`gross departure from the statute'" which would give rise to presumed prejudice, the challenger must demonstrate actual prejudice (quoting State v. Rice, 120 Wash.2d 549, 562, 844 P.2d 416 (1993))).
¶ 14 In establishing actual prejudice, the most important questions are whether "`there was any exclusion of any class of citizen or weighting of the jury list or that the jury list was not a representative cross section of the community,'" or whether "`the *686 jury list, the venire or the jury itself was so composed that there might have been any inherent bias or prejudice'" against the challenger or denial of his or her "`right to challenge any juror for bias or peremptorily.'" Twyman, 143 Wash.2d at 122, 17 P.3d 1184 (quoting Finlayson, 69 Wash.2d at 156, 417 P.2d 624).
¶ 15 In Twyman the district court worked from a list randomly selected from the entire county and then from the zip codes closest to the Shoreline Division and these zip codes only imprecisely paralleled the actual boundaries of the Shoreline Division. Twyman, 143 Wash.2d at 121, 17 P.3d 1184. Some of the population of the electoral district was thus excluded and others who lived outside the district, i.e., in Seattle, were included as prospective jurors. Id. Despite the fact that the zip code areas only roughly matched the electoral district, we concluded that the "procedure was a fair approximation of the Shoreline Division's electoral district, i.e., `population of the area served by the court,'" id. (quoting RCW 2.36.050), and accordingly there was substantial compliance with RCW 2.36.050.
¶ 16 Just as in Twyman, the jurors in the pool from which Mr. Garrett's jury was drawn lived in areas encompassed by three zip codes that imprecisely follow the city boundaries. As in Twyman, the area to which the zip codes apply includes areas outside Tukwila. Mr. Garrett contends, however, that none of the jurors on his jury were from Tukwila. He contends that of 40 potential jurors, only 3 gave a Tukwila address and one juror who was in the pool did not reside within the three-zip-code area (this juror was not selected for his jury). He argues that these facts show material departure from the statute. He also distinguishes Twyman on the basis that there the court used a subset of eligible jurors, while here, he says, the court used a set of jurors who lived beyond the city limits. He contends that his jury was not selected substantially in the manner required by law and therefore he can claim error without showing prejudice.
¶ 17 But we have already decided this issue contrary to Mr. Garrett's position. Under the analysis in Twyman, the juror selection process substantially complied with RCW 2.36.050 and there was no material departure from the statutory requirements. Moreover, factually the cases are indistinguishable on the issue of substantial compliance. In both cases, the jurors were drawn from areas covered by three zip codes that only roughly encompass the courts' electoral district boundaries. In each case, this procedure resulted in potential jurors being drawn from outside the electoral district and others inside the electoral district being excluded.
¶ 18 The fact that the particular pool from which Mr. Garrett's particular jury was selected included a majority of jurors from outside Tukwila's boundaries does not invalidate the selection procedure provided the jurors were randomly selected, and there is simply no evidence or argument that they were not randomly selected. Nothing in this case suggests that Mr. Garrett did not have a fair and impartial jury, which is, ultimately, the critical inquiry.[4] Because Twyman establishes that the method used for selecting the jury pool did not materially depart from the statutory requirements, no prejudice is presumed. Mr. Garrett makes no argument that he was actually prejudiced by the selection process.
¶ 19 We reverse the superior court and hold that the jury selection process substantially complied with RCW 2.36.050.
¶ 20 Next we turn to the matter whether there was a valid agreement whereby King County Superior Court properly selected the jurors. The trial court correctly decided that there was a valid agreement. After the written agreement expired by its express terms, the courts entered an oral agreement for services according to the same terms. RCW 2.36.052 provides: "Pursuant to an agreement between the judge or judges of each superior court and the judge or judges of each court of limited jurisdiction, jury management activities may be performed by the *687 superior court for any county or judicial district as provided by statute." RCW 2.36.095 concerns summoning persons selected to serve on juries, and subsection (2) provides that "[i]n courts of limited jurisdiction summons shall be issued by the court. Upon the agreement of the courts, the county clerk may summon jurors for any and all courts in the county or judicial district." RCW 2.36.050 directs that courts of limited jurisdiction "shall use the master jury list developed by the superior court to select a jury panel," and RCW 2.36.052 allows selection of jurors by the superior court from the same master list if the court of limited jurisdiction and the superior court agree to this procedure.
¶ 21 Nothing in the statutes requires any particular method for reaching agreement, and certainly no formal contract requirements are mandated. The legislature obviously expressed no preference as to which court makes the selection, and simply provided authority for the courts to decide this themselves. Here, the Tukwila Municipal Court clerk stated in her declaration that she had been advised by Judge Walden that the judge entered an oral agreement with King County Superior Court for juror selection services following expiration of the written contract, and the record includes the invoice sent to Tukwila Municipal Court by King County Superior Court for amounts due for jury selection services for the period May through September 2005. Given this evidence, the superior court erred in substituting its own finding that no agreement existed. Because the courts agreed that King County Superior Court would provide jury selection service, and the statutes do not mandate any particular form for that agreement or contain any preference for which court will make the selections, under RCW 2.36.052 and 2.36.095 the superior court had authority to issue jury summons for people serving on juries in the City of Tukwila.[5], [6]
¶ 22 Next, Mr. Garrett argues that his state and federal rights to a jury trial were violated. The state constitution provides that a defendant in a criminal prosecution shall have the right to a "trial by an impartial jury of the county in which the offense is charged to have been committed." Const. art. I, § 22. In Twyman, we held that in providing for jury panels "from the population of the area served by the court" of limited jurisdiction, RCW 2.36.050 satisfies this constitutional right. The constitution does not provide for the method for summoning jurors or define their qualifications, and therefore these are matters that the legislature can decide. Twyman, 143 Wash.2d at 123-24, 17 P.3d 1184. Jurors from the area served by the court are from the county in which the offense was allegedly committed.
¶ 23 The federal constitution provides the right to "an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI. Mr. Garrett does not explain how a jury from the area served by the municipal court for purposes of RCW 2.36.050 is not within the "district" where the offense charged allegedly was committed, and it is obvious that *688 it is. The term is most often addressed in the context of venue challenges in federal courts, and in this context an entire state may be the "district," or the area in which a federal district courts sits may be the "district." E.g., United States v. Mendoza, 108 F.3d 1155, 1156 (9th Cir.1997) (venue proper in the Western District of Washington where the defendants sold drugs in California to a third party who transported the drug to Washington for distribution). The constitutional provision has historical roots in prerevolution days when Parliament revived an old law that permitted the colonists, charged with crimes on colonial soil, to be moved to England or another colony for trial, far from friends, witnesses, and community, subject to the verdict of strangers who may lack common experiences or sympathy and might even bear hostility. See United States v. Muhammad, 502 F.3d 646, 651-52 (7th Cir. 2007) (discussing history), cert. denied, ___ U.S. ___, 128 S.Ct. 1104, 169 L.Ed.2d 813 (2008). It is not violated when jurors are drawn from the area covered by three zip codes applying to the City of Tukwila.
¶ 24 Mr. Garrett emphasizes the importance of a jury drawn from a fair cross-section of the community, and appears to argue that the jurors within the three-zip-code area that was outside the Tukwila electoral district do not share the same community values as those within the electoral district. Given the close proximity of the areas, we do not agree. Certainly if an entire district for purposes of a federal district court is constitutionally satisfactory, then the three zip code areas reflect sufficiently close community values.
¶ 25 Finally, Mr. Garrett maintains he may assert the right of citizens not to be called for jury service outside of their city. He relies on Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the Court held that under the equal protection clause a criminal defendant may object to race-based exclusions of jurors through peremptory challenges regardless of whether he or she and the excluded jurors share the same race. In Powers the Court concluded that the defendant also had standing to assert the rights of the jurors because, among other things, the defendant had a concrete interest in challenging the procedure since racial discrimination in the selection of jurors casts doubt on the integrity of the judicial process and places the fairness of a criminal proceeding in doubt. Id. at 411, 111 S.Ct. 1364.
¶ 26 No similar interest exists in this case. There is simply nothing here that suggests that the selection process resulted in any similar unfairness. As in Twyman, 143 Wash.2d at 124-25, 17 P.3d 1184, "[r]andomness is preserved by our recognition that a district court's electoral district serves as the population area from which its juries should be drawn" with no exclusion of jurors from within the three-zip-code area roughly approximating this district comparable to the exclusion of jurors in Powers.

CONCLUSION
¶ 27 We reverse the superior court. We hold that Mr. Garrett fails to show that his state and federal constitutional rights to jury trial were violated. Additionally, we conclude that a valid oral agreement authorized King County Superior Court to provide jury selection services for Tukwila Municipal Court and that selecting the jury pool from the area encompassed by three zip codes applying to the City of Tukwila substantially complied with RCW 2.36.050. Mr. Garrett's conviction is affirmed.
WE CONCUR: CHARLES W. JOHNSON, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, DEBRA L. STEPHENS, JJ.
SANDERS, J. (dissenting).
¶ 28 The majority holds a municipal court jury is representative of a cross-section of the municipal community when none of the jury members resides in the municipality. I would hold a municipal court jury composed of no members of the municipal community is invalid under statute and the state and federal constitutions and affirm the King County Superior Court.

*689 FACTS
¶ 29 Kellas Garrett was charged with violating a temporary protection domestic violence order and tried in Tukwila Municipal Court. Prior to Garrett's trial, the Tukwila Municipal Court and the King County Superior Court had a written agreement for a coordination of jury services, in which the superior court was responsible for processing jury summonses, maintaining juror information, and processing the responses from jurors. The agreement lasted for 18 months, from October 1, 2003 through April 30, 2005 when the agreement expired by its express terms. In September 2005, Garrett's trial occurred.
¶ 30 The King County Superior Court for Garrett's trial selected a jury pool from three zip codes roughly conforming to Tukwila's boundaries, but also containing homes outside the Tukwila city limits. None of the selected jurors lived in Tukwila. Garrett was later found guilty as charged. Garrett then moved to dismiss his conviction, alleging the Tukwila Municipal Court had no authority to select jurors outside the city limits, and no valid jury services agreement was in place between King County and the Tukwila Municipal Court. The municipal court denied his motion for dismissal. Garrett appealed to the superior court. The King County Superior Court reversed his conviction, holding there was material departure from the jury selection procedural requirements under RCW 2.36.050 because the Tukwila Municipal Court had no authority to summon jurors outside the City of Tukwila, and there was no jury services agreement in effect between the superior court and the municipal court. The City of Tukwila appealed to Division One of the Court of Appeals seeking discretionary review, which the Court of Appeals granted, and the matter was transferred to this court.

ANALYSIS
¶ 31 RCW 2.36.050 states:
In courts of limited jurisdiction, juries shall be selected and impaneled in the same manner as in the superior courts, except that a court of limited jurisdiction shall use the master jury list developed by the superior court to select a jury panel. Jurors for the jury panel may be selected at random from the population of the area served by the court.

(Italics added.) The majority takes the statement "from the population of the area served by the court" to mean a juror can be selected from any area outside the City of Tukwila. Majority at 686. The majority contends the jury selection process was proper under State v. Twyman, 143 Wash.2d 115, 17 P.3d 1184 (2001). The majority states correctly that the test in Twyman for reversing a conviction based on the jury selection process requires (1) actual prejudice to be presumed only if there is a material departure from the statutory requirements and (2) if there is substantial compliance with the statute, then a challenger may claim error only if he or she establishes actual prejudice. Majority at 685-86. To determine actual prejudice we examine whether any class of citizens was excluded, the jury list was not weighted, or the list was not representative of a cross section of the community. Twyman, 143 Wash.2d at 122, 17 P.3d 1184.
¶ 32 However the majority then misapplies Twyman by concluding it is indistinguishable from Garrett's case because both cases involved no material departure from RCW 2.36.050, and substantial compliance with RCW 2.36.050 occurred because jurors were drawn from an area covered by three zip codes that only roughly encompassed the courts' electoral district boundaries. Majority at 686. But the majority fails to mention Twyman dealt with a King County District Court that is part of a larger King County judicial system, whereas Garrett's case involves a City of Tukwila municipal court that has no jurisdiction outside of its city boundaries. See Twyman, 143 Wash.2d at 118, 17 P.3d 1184; RCW 3.50.020. Also unlike the jury in Twyman, Garrett's jury had no members from the City of Tukwila electoral district where his case was tried. The Twyman court stated, "Randomness is preserved by our recognition that a district court's electoral district serves as the population area from which its juries should be drawn." Twyman, 143 Wash.2d at 124-25, 17 P.3d 1184.
*690 ¶ 33 Here the electoral district that the Tukwila Municipal Court serves is the City of Tukwila. In Twyman, the court used a subset of eligible jurors from a district court that is part of a larger county judicial system. Id. at 118-19, 17 P.3d 1184. On the other hand Garrett's jury contained no members from the City of Tukwila's electoral district, and the prospective jury pool contained only 3 out of 40 prospective jurors from Tukwila. Thus there was material departure from RCW 2.36.050's "population of the area served by the court" requirement; since there was no substantial compliance, actual prejudice is established. Therefore we should affirm on the material departure issue.[1]
¶ 34 Next the majority ignores the statute of frauds and holds an oral agreement for jury services between the King County Superior Court and the Tukwila Municipal Court that cannot be performed within one year is valid. Majority at 687, 687 n. 6. By the time of Garrett's trial in September 2005, a written agreement to provide jury services between the King County Superior Court and the Tukwila Municipal Court had expired in April 2005 without any renewal via written agreement. See RCW 2.36.052. The majority states, "Nothing in the statutes requires any particular method for reaching agreement, and certainly no formal contract requirements are mandated. The legislature obviously expressed no preference as to which court makes the selection, and simply provided authority for the courts to decide this themselves." Majority at 687.
¶ 35 However the legislature in none of the relevant jury services statutes disclaimed the statute of frauds, which requires any agreement that cannot be performed within one year to be in writing and signed by the party to be charged or it is void. See RCW 19.36.010. Contracts that have been terminated or extinguished cannot be extended without written agreement. See Pavey v. Collins, 31 Wash.2d 864, 870, 199 P.2d 571 (1948). Here there is no written agreement showing the original 18-month jury services contract that ended in April 2005 was extended. No statute of frauds exception applies. Thus we should affirm the superior court, because since the jury services contract was not renewed in writing, the jury summonses in Garrett's trial were invalid.
¶ 36 The majority also makes Garrett's state and federal constitutional rights to a criminal jury trial defunct by holding Garrett's Tukwila Municipal Court jury, 100 percent composed of members from outside the City of Tukwila's electoral district, is constitutional because the jurors are representative of the Tukwila community. Majority at 687-88. Under the majority's logic, a resident of White Center, Washington, has supposed similar community values as a resident of Bellevue, Washington, to serve on a City of Bellevue municipal jury. RCW 2.36.080(2) also states, "It also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service." The majority's holding allowing jurors to be selected from outside the municipal electoral district limits only exacerbates the burdens sought to be prevented in RCW 2.36.080(2).
¶ 37 The majority's analogies to federal district courts are as misplaced as its Twyman analogies because the jurisdictional scope of federal powers is much larger than the narrow powers of a municipality. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-22, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (holding personal jurisdiction under federal civil law requires mere minimum contacts with forum); United States v. Reed, 773 F.2d 477, 481 (2d Cir.1985) (holding proper venue under federal criminal laws depends on substantial contacts test involving many factors); RCW 3.50.020. The majority's citation to United States v. Mendoza, 108 F.3d 1155, 1156 (9th Cir.1997) does not help because Mendoza holds venue is proper for the crime of drug possession only where the principal commits it.
*691 ¶ 38 Here Garrett allegedly committed his crime within the City of Tukwila. Garrett in supposedly committing his crime had no minimum contacts or substantial contacts with King County outside the City of Tukwila. Garrett's crime was not serious enough to warrant jurisdiction by the King County Superior Court. The Tukwila Municipal Court has jurisdiction over those such as Garrett who allegedly commit certain domestic violence crimes limited to the boundaries of its municipality. RCW 3.50.020. The Tukwila Municipal Court is not a part of a larger county or federal court system. Yet the majority maintains that jurors who do not live within the City of Tukwila can be summoned to serve in a municipal court that has jurisdiction only over its city limits. Thus, I would hold the jury summons process that created a prospective jury pool of 92 percent Tukwila nonresidents (37 out of 40) and had no actual jurors who were City of Tukwila residents is in violation of Garrett's state and federal constitutional rights to a criminal jury that is representative of the electoral district in which he is charged.

CONCLUSION
¶ 39 I would affirm the King County Superior Court to hold (1) a municipal court jury composed of no members of the municipal community is invalid under RCW 2.36.050, which requires jurors to be selected from the "population of the area served by the court"; (2) an oral agreement regarding an expired jury services contract between the King County Superior Court and the Tukwila Municipal Court violates the statute of frauds, and jury summonses in Garrett's trial were invalid; and (3) Garrett's state and federal constitutional rights to a criminal jury trial were violated because no jury members in his municipal court trial resided in the City of Tukwila.
¶ 40 I dissent.
I CONCUR: GERRY L. ALEXANDER, C.J.
NOTES
[1] The City submitted an online inquiry to the United States Postal Service asking what zip codes apply to the City of Tukwila, and the response included these three zip codes. Clerk's Papers at 96 (see U.S. Postal Service Zip Code Lookup, available at http://zip4.usps.com/zip4/welcome.jsp (last visited Nov. 21, 2008)).
[2] RCW 2.36.052 provides: "Pursuant to an agreement between the judge or judges of each superior court and the judge or judges of each court of limited jurisdiction, jury management activities may be performed by the superior court for may county or judicial district as provided by statute."
[3] The trial court announced its findings following argument on these issues at Garrett's sentencing hearing. Although the court also indicated its intent to issue written findings, evidently none were issued. Neither party complains about the lack of written findings.
[4] Following the logic of the dissent would reduce the population from which the jury pool is drawn below that authorized by this court in Twyman. The result, ironically, would be a less fair trial than the constitution demands.
[5] The trial court determined that Mr. Garrett lacked standing to challenge the validity of the agreement between the Tukwila Municipal Court and King County Superior Court. Garrett did not raise the issue of standing on his RALJ appeal, and the superior court did not discuss the matter. Neither party addresses it in briefing to this court. The trial court's conclusion appears correct because standing requires that the party assert an interest that arguably falls "within the zone of interests to be protected by the statute or constitutional guaranty in question." Branson v. Port of Seattle, 152 Wash.2d 862, 875-76, 101 P.3d 67 (2004); Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wash.2d 791, 802, 83 P.3d 419 (2004). Mr. Garrett was not a party to the agreement between the courts, and he has no protected interest in a formal contract between King County Superior Court and Tukwila Municipal Court, or indeed in any particular form of agreement between the courts. However, we do not reach the question of Garrett's standing to challenge the validity of the agreement. Rather, because the City has challenged the superior court's determination that the agreement was invalid, we address the issue of its validity.
[6] Mr. Garrett contends, though, that any oral renewal of the agreement violated the statute of frauds, RCW 19.36.010 (agreement that by its terms is not to be performed in one year must be in writing and signed by the party to be charged therewith), and is therefore not valid. But Garrett is not a party to the agreement and offers no basis on which he is entitled to challenge its validity on statute of frauds grounds.
[1] The majority asserts that reducing the population from which the jury pool is drawn would result in a less than fair trial. Majority at 686 n. 4. However, the majority fails to recognize that the jury pool was already less than fair, actually prejudicial, because it contained an extremely low percentage of people from the City of Tukwila. By the majority's logic, the jury pool population could be drawn from anywhere as long as it did not fall below "that authorized by this court." Id.