[No. 63494-1-I.  Division One.  June 28, 2010.]

THE CITY OF BOTHELL, *Respondent*, v. JAMES K. BARNHART, *Petitioner*.

---

*James K. Barnhart*, pro se.

*Mark R. Stephens* (of *The Law Office of Mark R. Stephens*), for petitioner.

*Joseph N. Beck, City Attorney*, and *Paul R. Byrne II, Assistant*, for respondent.

¶1 DWYER, C.J. — Today, we decide whether a jury in a criminal trial may include members who do not reside in the county in which the charged offense is alleged to have been committed. Pursuant to article I, section 22 of the Washington Constitution, a defendant has the right to be tried by a "jury of the county in which the offense is charged to have been committed." Thus, to be constitutionally qualified for jury service, a prospective juror must reside in the county wherein the offense is alleged to have been committed. The city of Bothell, which is located in both King County and Snohomish County, charged that James

K. Barnhart committed the offense of stalking in Sno-
homish County. However, the jury that convicted Barnhart
included King County residents, in violation of Barnhart's
jury-trial right provided in article I, section 22. Accordingly,
we reverse and remand for a new trial.

I

¶2 Barnhart was tried by a jury in the Bothell Municipal
Court for the offense of stalking. Bothell is one of a few
cities in the state that is located in two counties, encom-
passing portions of both King and Snohomish Counties. The
city alleged that Barnhart committed the offense of stalk-
ing in Snohomish County.

¶3 Prior to the commencement of trial, Barnhart ob-
jected to the impaneling of any King County resident on the
jury, invoking his right to a trial "by an impartial jury of the
county in which the offense is charged to have been com-
mitted" as provided in article I, section 22 of the Washing-
ton Constitution. Over Barnhart's objection, the trial court
seated two King County residents and four Snohomish
County residents on the jury. Barnhart was convicted as
charged.

¶4 Barnhart appealed from his conviction to the King
County Superior Court, assigning error to, among other
things, the impaneling of King County residents on the jury.
The superior court affirmed. Although the superior court
recognized Barnhart's article I, section 22 jury-trial right
and that the city had alleged that the charged offense was
committed in Snohomish County, it concluded that the trial
court did not err because it had complied with RCW
2.36.050.[1] That statute permits courts of limited jurisdic-

---

[1] The statute provides:

> In courts of limited jurisdiction, juries shall be selected and impaneled in the
> same manner as in the superior courts, except that a court of limited
> jurisdiction shall use the master jury list developed by the superior court to
> select a jury panel. Jurors for the jury panel may be selected at random from
> the population of the area served by the court.

tion to randomly select jurors "from the population of the area served by the court," which, in this case, includes portions of both King County and Snohomish County.

¶5 Barnhart subsequently sought discretionary review. A commissioner of this court granted discretionary review of the following issue: "whether a jury may include members who reside other than in the county in which the offense is alleged to have occurred."

## II

¶6 Barnhart contends that the impaneling of King County residents on the jury violated his state constitutional right to be tried by a jury of the county in which the charged offense was alleged to have been committed. We agree.

■ ¶7 Article I, section 22 of the Washington Constitution sets forth the rights of the accused. It provides that criminal defendants shall have the right to "trial by an impartial jury of the county in which the offense is charged to have been committed." CONST. art. I, § 22. At issue is whether a jury that includes members who do not reside in the county in which the offense is alleged to have been committed is consistent with a defendant's jury-trial right provided in article I, section 22. This issue appears to be one of first impression.

■ ¶8 When interpreting provisions of the state constitution, we "look first to the plain language of the text and . . . accord it its reasonable interpretation." *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004) (citing *Anderson v. Chapman*, 86 Wn.2d 189, 191, 543 P.2d 229 (1975)). "The words of the text will be given their common and ordinary meaning, as determined at the time they were drafted." *Yarbrough*, 151 Wn.2d at 477 (citing *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 557, 452 P.2d 943 (1969)). " '[I]f a constitutional provision is plain and unambiguous on its face, then no construction or interpretation is necessary or permissible.' " *City of Woodinville v.*

*Northshore United Church of Christ*, 166 Wn.2d 633, 650, 211 P.3d 406 (2009) (alteration in original) (quoting *Anderson*, 86 Wn.2d at 191).

¶9 The plain language of article I, section 22 confers on a defendant the right to be tried by a "jury of the county in which the offense is charged to have been committed." The term "county" is singular; it is also definite. It plainly refers to only one, particular county: the county wherein the defendant was alleged to have committed the charged crime. On its face, article I, section 22 does not permit a jury to include any individual who is not a resident of that county. Leading authorities on the state constitutional convention do not suggest that delegates to the convention understood article I, section 22 to have a different meaning. *See* ROBERT F. UTTER & HUGH D. SPITZER, THE WASHINGTON STATE CONSTITUTION: A REFERENCE GUIDE 35-37 (2002); THE JOURNAL OF THE WASHINGTON STATE CONSTITUTIONAL CONVENTION 1889, at 510-12 (Beverly Paulik Rosenow ed., William S. Hein & Co. 1999) (1962). Thus, residence in the county wherein the charged crime was allegedly committed is a constitutional requirement that must be satisfied for an individual to qualify for jury service. A defendant's jury-trial right provided in article I, section 22 is satisfied only if all jurors reside in the county wherein the charged offense was allegedly committed.

¶10 The city does not affirmatively argue that the drafters of the state constitution understood article I, section 22 to allow for a jury to be composed of individuals who do not reside in the county wherein the charged crime was alleged to have been committed. Instead, the city argues that the drafters likely did not contemplate municipalities such as Bothell that straddle county lines. Be that as it may, article I, section 22 has not been amended. To read article I, section 22 as the city urges would require us to ignore the plain meaning of the text. This we may not do. *Wash. State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674, 763 P.2d 442 (1988).

¶11 In addition, the city mistakenly relies on *State v. Lanciloti*, 165 Wn.2d 661, 201 P.3d 323 (2009), and *City of Tukwila v. Garrett*, 165 Wn.2d 152, 196 P.3d 681 (2008), in defense of the jury selection procedure used herein. In *Lanciloti*, our Supreme Court upheld the constitutionality of RCW 2.36.055, which allows certain superior courts to select jurors from only a subsection of the county wherein the court is located, as opposed to the entire county. 165 Wn.2d at 667-72. *Lanciloti* addressed a unique statutory regime that does not apply in this context. At issue in *Garrett* was whether RCW 2.36.050, which allows a court of limited jurisdiction to select jurors from the population of the area served by the court, permitted a municipal court to seat jurors who did not actually live in the city served by the court. 165 Wn.2d at 162. Our Supreme Court held that the court's practice of summoning the venire from an area that imprecisely followed the boundaries of the city substantially complied with the statute, even where some jurors actually resided outside of the city. *Garrett*, 165 Wn.2d at 162. However, the trial courts in neither *Lanciloti* nor *Garrett* seated jurors who did not reside in the county wherein the charged crime was alleged to have been committed. Therefore, neither of those decisions applies in this context.

¶12 Moreover, RCW 2.36.050 cannot relax the protection afforded to a criminal defendant by article I, section 22. Passage of a statute is not among the procedures for amending the state constitution. *See* Const. art. XXIII. Although the legislative policy of allowing a court of limited jurisdiction to draw a jury from only the portion of the county served by the court is consistent with article I, section 22, *State v. Twyman*, 143 Wn.2d 115, 124-25, 17 P.3d 1184 (2001), article I, section 22 guarantees the right of an accused to be tried by a jury drawn exclusively from the county wherein the charged crime was alleged to have been committed. *Lanciloti*, *Garrett*, and *Twyman* are consistent with that principle.

¶13 The impaneling of the jury herein over Barnhart's objection constitutes a manifest violation of Barnhart's

jury-trial right as provided in article I, section 22 of the state constitution. He properly challenged for cause the prospective King County jurors. The trial court erred by denying these challenges.

■ ¶14 A material departure from the statutory scheme for selecting a jury results in presumptive prejudice requiring reversal and remand for a new trial. *State v. Tingdale*, 117 Wn.2d 595, 602-03, 817 P.2d 850 (1991). Similar deviation from a constitutional requirement can be no less consequential. Accordingly, reversal and remand for a new trial is required.[2]

---

[2] The city contends that we should affirm despite the commission of constitutional error because Barnhart failed to exercise peremptory challenges and failed to show anything other than harmless error. However, discretionary review of those issues was neither sought nor granted, and the city did not seek to modify the order granting discretionary review. In addition, the city acknowledged at oral argument that it had not raised these contentions in the courts below.

Pursuant to RAP 2.3(e), "[u]pon accepting discretionary review, the appellate court may specify the issue or issues as to which review is granted." That is, we may "determine[ ] the scope of discretionary review." *Emily Lane Homeowners Ass'n v. Colonial Dev., LLC*, 139 Wn. App. 315, 318, 160 P.3d 1073 (2007), *aff'd in part, rev'd in part sub nom. Chadwick Farms Owners Ass'n v. FHC, LLC*, 166 Wn.2d 178, 207 P.3d 1251 (2009). We granted review on a single, narrow issue. Accordingly, we decline to address other issues for which discretionary review was not granted.

Further, it would it be imprudent for us to address those complex issues for the first time on discretionary review without the benefit of full development of the issues and complete briefing. The city argues that several Washington decisions stand for the broad proposition that a defendant must exercise his or her peremptory challenges before assigning error to the seating of a particular juror. *See, e.g., State v. Robinson*, 75 Wn.2d 230, 231-32, 450 P.2d 180 (1969); *State v. Collins*, 50 Wn.2d 740, 744, 314 P.2d 660 (1957); *State v. Tharp*, 42 Wn.2d 494, 500, 256 P.2d 482 (1953); *State v. Jahns*, 61 Wash. 636, 638, 112 P. 747 (1911); *Martini v. State*, 121 Wn. App. 150, 175, 89 P.3d 250 (2004) (Quinn-Brintnall, J., concurring in result); *State v. Reid*, 40 Wn. App. 319, 322, 698 P.2d 588 (1985). However, unlike the factual situations presented in those cases, in this case Barnhart actually objected to the seating of individuals on the basis that they were not constitutionally qualified to serve as jurors. The city's contention is also in tension with our Supreme Court's statement that

if a defendant believes that a juror should have been excused for cause and the trial court refused his for-cause challenge, he may elect not to use a peremptory challenge and allow the juror to be seated. After conviction, he can win reversal on appeal if he can show that the trial court abused its discretion in denying the for-cause challenge.

*State v. Fire*, 145 Wn.2d 152, 158, 34 P.3d 1218 (2001) (adopting reasoning articulated in *United States v. Martinez-Salazar*, 528 U.S. 304, 315, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000)). The city does not explain why that principle articulated

¶15 Reversed and remanded.

BECKER and SPEARMAN, JJ., concur.

Review granted at 170 Wn.2d 1005 (2010).

in *Fire* does not apply to Barnhart. Furthermore, unlike the issue decided in *Fire*, Barnhart does not contend that he suffered prejudice as a result of exercising a peremptory challenge to excuse a juror who should have been excused for cause.

We also note that the city's argument concerning prejudice and harmless error is based on the premise that Barnhart bears the burden of showing prejudice. The city acknowledges that prejudice will be presumed when there is a material departure from statutory requirements for jury selection but argues that no such presumption is warranted because the trial court herein substantially complied with RCW 2.36.050. However, as is explained above, RCW 2.36.050 cannot relax the protection afforded under the state constitution, which was ignored in this case. The city does not explain why the presumption does not arise in Barnhart's favor.